Parker C. J.
delivered the opinion of the Court. The decision of this case depends upon the power of a guardian of a person non compos mentis over the chattels and personal estate of his ward, whether it extends to the transfer of such property without license from some judicial tribunal. The statute which creates this office of guardian does not limit or define his power in this respect, nor is there any thing in the common law from which his authority can be ascertained. It is only therefore by referring to the nature and duties of the office, and from such implications as are afforded by the statute, that any aid can be obtained in settling this question.
By the statute of 1783, c. 38, the power and duties of guardians are prescribed, and these are in very general terms, viz. “ to take care of the person and estate, both real and personal, of such person, and to make a true and nerfect *263 inventory of the said estate, to be returned into and filed in the probate office in such county.” In the 4th section of the same statute it is provided, that the guardian shall improve frugally, and without waste and destruction, the estate of the person non compos, and apply the annual income and profits thereof for the comfortable support of such person and his family, and shall manage, improve or divide the real estate, in as ample a manner as the ward might do if of sound mind, and shall pay debts out of the personal estate, or if that is insufficient, then out of, the real estate, upon obtaining license for the sale thereof; and in case the income or improvement of the personal and real estate is insufficient for the support of the ward, the guardian may sell the real estate for this purpose also, upon license obtained for that purpose.
Without doubt it was contemplated by the legislature, that the guardian had power, by virtue of his office, to sell the personal estate, for with that he is to pay the debts of his ward, and it is only when the real estate is wanted for that purpose, or for the support of the ward, that it is to be sold under a license of the court. Indeed the application for leave to sell the real estate, is always founded upon a deficiency of personal estate for the purposes for which the sale is wanted, and a certificate' of the judge of probate to that effect is required. It is true, the guardian ought not to sell personal estate, unless the proceeds are wanted for the due execution of his trust, or unless he can by the sale produce some advantage to the estate ; but having the power without obtaining any special license or authority, "a title under him acquired ioná fide by the - purchaser, will be good, for the purchaser cannot know whether the power has been executed with discretion or not, and the estate is always supposed to be secure by the bond given by the guardian for the faithful execution of his trust and discreet management of the property. That this is the law in regard to personal property generally, cannot be doubted ; and we do not see any reasonable ground of exception in favor of the species of property transferred by the guardian in this case. If bank stock, insurance stock, stock in the public funds, could be disposed *264 of by guardians, there seems to be no reason why the same power should not extend to the shares or rights in a bridge corporation ; and that all this kind of property was considered to be under the control and at the disposal of the guardian, under the general statute, admits of no doubt, when it is found that the legislature have since, but after the sale in question, prohibited the sale by guardians, of stock of any kind belonging to their wards, without license from the judge of probate of the county. St. 1817, c. 190, § 35. This is no doubt a wise provision, but the very enactment of it proves, that, before, no such authority was required by the law, but that it fell within the general authority of the guardian.[1]
But it is thought by the counsel for the defendants, that the interest of Mrs. Bishop in this property was such, that neither she, had she remained a legal agent, nor her guardian, could sell it; that it was in the nature of a trust, of which either the executors of Timothy Dexter’s will, or the directors of the corporation, were the trustees, she having no other right than to receive the income. No such trust is created directly by the will, and we think none can be implied in relation to her interest in the property. The words of the will are, “ I give unto my daughter, Nancy Bishop, wife of Abraham Bishop, the improvement of thirty shares in Essex Merrimack Bridge, during her natural life, and at her decease to be equally divided among her heirs.” These words, strictly taken, would give her the whole property in the nature of a fee simple. But such was obviously not the intent of the testator. By the word heirs was intended children, as appears more clearly by a subsequent clause, in which he says he gives to his son, Samuel L. Dexter, and his daughter Nancy, “ all the rest and remainder &c., to them and their heirs ; but if the said Samuel and Nancy should die imthout heirs, then my will is, the same be divided between my two brothers and their heirs ; ” evidently in both cases using the word heirs for children. Nancy Bishop therefore took by the will an interest for life in these shares, with re *265 mainder to her children. She could not therefore, nor could her guardian, transfer any thing more than. her life estate. The capital or fund must remain under the control of the executors during her life. But her interest is transferable by law, and might be taken for her debts, if she were of capacity to be liable, by attachment. It is in the nature of an annuity, which is always transferable. The certificate issued by the president of the corporation, pursuant to their by-laws, shows correctly the interest of Mrs. Bishop.
A question is made, whether the instrument of conveyance given by the guardian is legally sufficient to pass the property. It purports to transfer the stock itself, which was not within the power of the guardian, his ward having only a life estate ; but the plaintiff being a bona fide purchaser, it shall hold all that the guardian had a right to sell. This is a common principle in relation to deeds and grants. As to the objection, that the plaintiff has no certificate of his ownership, we think that cannot prejudice his claim, as it is not in his power to obtain one without the consent of the corporation.
Nor do we think that the action should fail for want of privity between the plaintiff and the defendants. If he has established his right at law to the shares, the dividends belong to him, and are so much money received by the corporation to his use. The law establishes the privity, when one person has money in his hands which legally and conscientiously belongs to another. The conduct of the guar dian, in relation to this property, appears to have been indiscreet, if not dishonest. He probably thought, that as he bad married the only child of Mrs. Bishop, he had a right to dispose of the whole property in the shares. But the plaintiff appears to have acted fairly in his purchase, and the law will protect him. If the estate of the ward suffer, it must be for want of caution in taking the security ; which is always supposed to be adequate to any deficiencies occasioned by the waste, imprudence or unfaithfulness of the guardian.
Defendants defaulted.

 See Field v. Schieffelin, 7 Johns. Ch. R. 150.